# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SANDI D. JACKSON )<br>as next friend and parent of )<br>KEELY A. JACKSON, a minor child )<br>under the age of eighteen years old )<br>)<br>)<br>)<br>      Plaintiffs, )<br>)<br>v. )<br>)<br>RASHONDALYN NIXON, individually )<br>and CHRISTY BLAZER, individually )<br>)<br>)<br>      Defendants. ) | Case No.: 3:09-CV-0954<br>Judge Trauger |

## MEMORANDUM

Pending before the court is a Motion to Dismiss (Docket No. 7)[1] filed by defendants Rashondalyn Nixon and Christy Blazer, to which the plaintiffs have responded (Docket No. 10). For the reasons discussed herein, the motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Keely Jackson ("Keely") is a nine year-old child.[2] Her mother (the plaintiff, suing on

---

[1] Also pending before the court is the plaintiffs' Motion to Amend/Correct the Complaint (Docket No. 4). The court is unable to discern a difference between the Amended Complaint (Docket No. 3), upon which the defendants based their Motion to Dismiss, and the proposed (Second) Amended/Corrected Complaint (Docket No. 4, Ex. 1). Therefore, the Motion to Amend will be denied as moot.

[2] Unless otherwise noted, the facts are drawn from the plaintiffs' Amended Complaint (Docket No. 3).

1

behalf of herself and Keely), Sandi D. Jackson ("Jackson"), and her father, Mitchell Lanphere, are unmarried. Jackson has legal custody of Keely, while Lanphere has visitation rights.

Keely spent the night at Lanphere's home on July 24, 2009, as it was his designated "visitation weekend." The following morning, July 25, 2009, Keely attended a gymnastics practice, where she was noticeably "upset and distraught." When her coach inquired about what was upsetting her, Keely informed her coach that she refused to go back to Lanphere's house. Based upon this conversation, the coach called Jackson, who then retrieved Keely from gymnastics practice and brought her home. At this time, Keely informed her mother that she became upset at gymnastics practice because Lanphere had "engaged in inappropriate conduct with her." Upon hearing this, Jackson refused to allow Lanphere further visitation, and she called law enforcement officers when Lanphere attempted to pick Keely up from Jackson's home later in the day on July 25, 2009.

Jackson filed an Emergency Motion Suspending Visitation ("Emergency Petition") and a proposed Temporary Restraining Order ("TRO") following this incident. The TRO was entered on August 4, 2009. However, on August 11, 2009, the Juvenile Court of Sumner County denied the Emergency Petition and dissolved the TRO.

On August 12, 2009, Keely met with her therapist. During the therapy session, Keely disclosed to her therapist that her father had been "inappropriately touching her" and that he had done so on the night of July 24, 2009. She further informed her therapist that this was the reason that she had a "melt down" at gymnastics practice. The therapist immediately reported Keely's allegations of sexual abuse to the Sumner County Child Protection Service and informed Jackson of what Keely had said.

2

Following the report of suspected sexual abuse, DCS employees Christy Blazer and Rashondalyn Nixon (the defendants) conducted an interview.[3] As a result of the interview, on August 21, 2009, Nixon put a "safety plan" in place, which stopped unsupervised visitation between Keely and Lanphere. Subsequently, on August 25, 2009, Nixon visited Keely at school, without informing Jackson or Jackson's relatives. Nixon read the August 11, 2009 Order that denied Jackson's Emergency Petition to Keely and asked Keely "to respond" to the Order. Based upon Keely's response, Nixon allegedly accused Keely of not telling the truth about matters relating to the alleged abuse.

On September 1, 2009, the defendants "determined [] Keely's case [to] be closed and informed Lanphere." Upon hearing this, Lanphere filed a motion to have Keely declared "despondent [sic] and neglected." On September 4, 2009, the Sumner County Juvenile Court heard arguments on the motion. At the hearing, Nixon recommended that unrestricted visitation between Keely and Lanphere resume, despite the fact that Nixon admitted that she did not follow DCS standard procedure throughout her investigation of abuse.[4] Nixon repeated this recommendation on September 16, 2009 at another hearing.[5] Allegedly, because of Nixon's recommendations, Lanphere was "emboldened" to file a motion for change of custody in the

---

[3] The Amended Complaint does not indicate who the defendants interviewed, nor does it discuss the substance of the interview.

[4] According to the Amended Complaint, the plaintiffs allege that Nixon did not follow DCS Administrative Policies and Procedures Section 14.7. *http://www.tn.gov/youth/dcsguide/policies/chap14/14.7.pdf (last visited Feb. 11, 2010).* Specifically, the Amended Complaint alleges that Nixon and Blazer did not interview Jackson, visit the home where the abuse was alleged to have occurred, or convene a meeting to discuss credibility factors.

[5] It is unclear whether the September 16, 2009 hearing pertained to Lanphere's motion or whether it was called for a separate purpose.

Sumner County Juvenile Court.

On October 9, 2009, the plaintiff filed her Complaint, brought on behalf of herself and her daughter, against the defendants in their individual capacities, alleging a violation of their constitutional rights under the Fourteenth Amendment's Due Process Clause. (Docket No. 1.) The plaintiffs then filed an Amended Complaint on November 2, 2009, which did not make substantive changes. (Docket No. 3.)

On January 15, 2010, the defendants moved to dismiss all claims against them. (Docket No. 7.) The defendants assert that the plaintiffs have failed to state a claim upon which relief can be granted, and, alternatively, that they are entitled to qualified immunity. (Docket No. 8 at 1.)

## ANALYSIS

The plaintiffs bring this suit under 42 U.S.C. § 1983, alleging that the defendants' actions violated their rights under the Due Process Clause of the Fourteenth Amendment. (Docket No. 3 at 1 ¶ 1.) Specifically, the plaintiffs claim that defendant Nixon violated their due process rights by "failing to follow DCS Rules and Regulations" and that defendant Blazer violated their due process rights by "not enforcing DCS's regulations which were designed" for protection, thus "expos[ing]" Keely "to her father without supervision." (Docket No. 1 at 5 ¶ ¶ 4.5-4.6.) Defendants Rashondalyn Nixon and Christy Blazer have jointly moved to dismiss these claims under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).[6] (Docket No. 7 at 1.)

**I. Standard of Review**

---

[6] The defendants did not state their basis for moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). To the extent that the defendants are moving pursuant to Fed. R. Civ. P. 12(b)(1) based on an assertion of qualified immunity, the court notes that it is unnecessary to determine the issue of qualified immunity, as the plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6).

4

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).

## II. Plaintiffs' Constitutional Claim

To state a claim under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a

Section 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. at 49 (internal quotation omitted). The defendants here have clearly acted under the color of state law, and, thus, the question is whether the plaintiffs' due process rights were violated.[7]

### A. Procedural Due Process

In order to establish a procedural due process claim under Section 1983, the plaintiff must establish three elements: (1) that she has a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that she was deprived of that protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford her adequate procedural rights prior to depriving her of that protected interest. *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).

The plaintiff is unable to establish that she has a life, liberty, or property interest protected by the Fourteenth Amendment. At stake in this case is a liberty interest. (See Docket No. 3); *see also "Tony" L. v. Childers*, 71 F.3d 1185 (6th Cir. 1995) (where plaintiff asserts that a state agency should have enforced child protection statutes in order to prevent sexual abuse, a liberty interest is implicated). Liberty interests "may arise from two sources - the Due Process Clause itself and the laws of the States." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S.

---

[7] The plaintiffs do not specify in their Amended Complaint or in subsequent briefing whether they are asserting a substantive or procedural due process violation. The Sixth Circuit has construed strikingly similar factual allegations as claiming a violation of a plaintiff's procedural due process rights, as a substantive due process claim would be foreclosed by the *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989) rule. *See "Tony" L. v. Childers*, 71 F.3d 1184 n.1 (6th Cir. 1995) (where the Kentucky Cabinet for Human Resources failed to follow statutory procedures when investigating allegations of child abuse, the complaint was construed as alleging a violation of the plaintiff's procedural due process rights).

6

Case 3:09-cv-00954   Document 12   Filed 02/17/10   Page 6 of 10 PageID #: 59

454, 460 (1989) (internal quotation ommitted).

First, the plaintiffs are unable to establish a protected liberty interest under "the Due Process Clause itself." *See id*. In *DeShaney*, the plaintiffs (a child and his mother) brought an action under 42 U.S.C. § 1983, asserting that employees of the County Department of Social Services failed to protect the child from abuse by his father, of which the Department "knew or should have known." *DeShaney*, 489 U.S. at 193. The Court held that the Due Process Clause does not confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government *itself* may not deprive the individual," as the Due Process Clause does not require that the state protect its citizens "against invasion by private actors." *Id*. at 195-196 (emphasis added).[8] Under *DeShaney*, therefore, the plaintiff does not have a protected liberty interest under the Due Process Clause. *Id*.; *see also "Tony" L.,* 71 F.3d at 1185 (plaintiffs' procedural due process claim asserting that a state agency should have enforced child protection statutes in order to prevent sexual abuse did not implicate a protected liberty interest under the Due Process Clause). As such, if the plaintiffs have a protected liberty interest, it must be based in state law.

State-created liberty interests arise "when a state places 'substantive limitations on official discretion.'" *"Tony" L.,* 71 F.3d at 1185 (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). A state substantively limits discretion "by establishing 'substantive predicates' to govern official decision-making, and, further, by mandating the outcome to be reached upon a

---

[8] Exceptions to this general rule exist where there is a "special relationship" between the State and the individual or when the "state created danger" doctrine is implicated. *See DeShaney*, 489 U.S. at 197-200; *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003). This case does not allege facts that would implicate either of these exceptions.

7

finding that the relevant criteria have been met." *Kentucky Dep't of Corrections*, 490 U.S. at 462. The state statutes or regulations at issue must "contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulators' substantive predicates are present, a particular outcome *must* follow, in order to create a liberty interest." *Id*. at 463 (emphasis added) (internal citations ommitted). Furthermore, the statute or regulation must "require a particular *substantive* outcome"; that is, "[s]tate-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amendment, even where such procedural rights are mandatory." *"Tony" L.,* 71 F.3d at 1185 (citing *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993)) (emphasis added).

The plaintiffs allege that DCS Administrative Policies and Procedures Section 14.7 embodies a state-created liberty interest. (See Docket No. 3 at 5 ¶ 4.6.) However, the plaintiffs fail to establish that "Keely Jackson would not still be exposed to her father without supervision" had DCS Administrative Policies and Procedures been followed; that is, the plaintiffs fail to show that the policies would have "require[d] a particular *substantive* outcome." *Id*.; *see "Tony" L.,* 71 F.3d at 1185.

DCS Administrative Policies and Procedures Section 14.7 establishes that DCS employees must perform specific procedures upon the receipt of an abuse report. It is true that a "Child Protective Services investigation case *must be classified* within thirty (30) days after receipt of report," and, that classifications include: (1) allegation indicated; (2) allegation unfounded; and (3) unable to complete.[9] In classifying a case, the policy provides numerous

---

[9] DCS Administrative Policies and Procedures Section 14.7.
*http://www.tn.gov/youth/dcsguide/policies/chap14/14.7.pdf, 1, 4-6 (last visited Feb. 11, 2010) (emphasis added).*

8

investigative tasks that "MUST" be completed within the thirty days from the receipt of the report.[10] These tasks include interviewing the child's parent, interviewing the alleged perpetrator, and visiting the home where the abuse is alleged to have occurred.[11]

However, while these policies require that DCS employees classify and investigate reports of abuse according to specific procedures, the procedures do not "guarantee a particular *substantive* outcome." *See "Tony" L.*, 71 F. 3d at 1185 (emphasis added). Indeed, the policy provides DCS employees with a wide range of discretion when actually classifying a case, as a report of abuse "*may*" be classified as "indicated" when "there is preponderance of evidence, *in light of the entire record*, which indicates the individual committed physical, severe or child sexual abuse, as defined [by statute]."[12] While proof of certain factors, such as an admission by the perpetrator or a statement of a credible witness to the abuse act, "will constitute preponderance of the evidence," no substantive outcome is guaranteed, even when proof of one of these factors exists, as DCS employees must still use their discretion to determine the credibility of a witness or to properly balance competing stories "in light of the entire record."[13] As such, the procedures do not "guarantee a particular substantive outcome"; rather, the policy "only give[s] [the plaintiffs] an expectation that a certain procedure will be followed." *See "Tony" L.*, 71 F.3d at 1186.

---

[10] DCS Administrative Policies and Procedures Section 14.7B. *http://www.tn.gov/youth/dcsguide/policies/chap14/14.7.pdf, 2 (last visited Feb. 11, 2010).*

[11] *Id.*

[12] DCS Administrative Policies and Procedures Section 14.7A. *http://www.tn.gov/youth/dcsguide/policies/chap14/14.7.pdf, 1-2 (last visited Feb. 11, 2010) (emphasis added).*

[13] *See id.*

9

Because the plaintiffs have failed to show that the state placed "substantive limitations on [DCS employee] discretion," the plaintiffs have failed to allege a state-created liberty interest, and, as such, a violation of their constitutional rights under the Fourteenth Amendment's Due Process Clause. *See id*. at 1185. Having held that the plaintiffs have failed to assert a claim for violation of their procedural due process rights, the consideration of qualified immunity is unnecessary.

## CONCLUSION

For the reasons discussed herein, the defendants' motion to dismiss will be granted.

An appropriate order will enter.

_____

ALETA A. TRAUGER
United States District Judge

10